O'BRIEN et al, Plaintiffs, v. PYLE, Secretary of State,
Defendant.

(214 N. W. 623.)

(File No. 6528.   Opinion filed June 29, 1927.)

1. **Statutes—Signatures on Petition for Referendum of One Statute
   Cannot Be Counted in Petition for Referendum of Another
   (Laws 1927, cc. 54, 113).**

   Signatures on a petition for referendum of Laws 1927, c.
   113, could not be counted in a petition for referendum of Laws
   1927, c. 54.

2. **Statutes—Duplicate and Triplicate Signatures by Same Elector
   in Petition for Referendum of Statute Should Be Stricken
   (Laws 1927, c. 54).**

   In an injunction proceeding, contesting the sufficiency of a
   petition for referendum of Laws 1927, c. 54, duplicate and
   triplicate signatures by the same elector must be stricken.

3. **Statutes—Unverified Signatures to Petition for Referendum of
   Statute Should Be Stricken (Laws 1927, c. 54; Const. art.
   3, § 1).**

   In an injunction petition proceeding, contesting the sufficiency
   of a petition for referendum of Laws 1927, c. 54, signatures
   not verified according to the requirement of Rev. Code 1919,
   § 5074, carrying out referendum feature of Const. art. 3, § 1,
   must be stricken.

4. **Statutes—Where Original Heading to Petition for Referendum of
   Statute Is Cut Off and Signature Pasted on Another Petition,
   Signatures Cannot Be Counted (Laws 1927, c. 54).**

   Where the original heading to a petition for referendum of
   Laws 1927, c. 54, was cut off, and in assembling several such
   petitions the signatures were pasted on another petition with a
   different heading, held that such signatures cannot be counted.

5. **Statutes—Where Petitions for Referendum of Statute Were Orig-
   inally Unverified, Having Printed Verification Forms Executed
   and Pasting Them on Petitions Does Not Satisfy Law, and
   Signatures Cannot Be Counted (Laws 1927, c. 54; Rev. Code
   1919, § 5074).**

   In an injunction proceeding contesting the sufficiency of a
   petition for referendum of Laws 1927, c. 54, where certain
   petitions were originally unverified and the person assembling
   the petitions, instead of return the petitions for verification, re-
   turned printed forms of verification for execution and pasted
   them on the petitions, held that the legal requirement of Rev.
   Code 1919, § 5074, was not satisfied and the signatures on
   such petitions could not be counted.

6.  Statutes — Signatures to Petition for Referendum of Statute,
    Where Signers Themselves Did Not Write Their Residence,
    Business, Date, and Address, Could Not Be Counted (Laws
    1927, c. 54; Rev. Code 1919, § 5069).

    Signatures to a petition for referendum of Laws 1927, c. 54,
    were not counted, where the place of residence, business, post
    office address, and date of signing were not written after the
    signature by the signers themselves, but were wholly or par-
    tially filled in by other persons.

7.  Statutes—Provision in Statute Allowing Petition for Referendum
    of Statutes that Petition Shall Be Liberally Construed Does
    Not Permit Violation of Substantial Requirements (Rev. Code
    1919, § 5073).

    Requirement of Rev. Code 1919, § 5073, that a petition for
    referendum of a statute shall be liberally construed so that the
    real intention of the petitioner may not be defeated by a mere
    technicality, does not mean that a substantial compliance with
    the law can be ignored.

---

Note.—See, Headnotes (1), (2), (3), (4), (5), (6) and (7),
American Key-Numbered Digest, Statutes, Key-No. 35½, 36 Cyc.
942 (Anno.).

For procedure in injunction suits, see Bancroft's Code Practice
and Remedies, Vol. 4, pg. 4458; for forms and pleadings, same, see
Bancroft's Code Pleading, Vol. 3, pg. 2550.

Injunction proceeding by Thos. O'Brien and another against
Gladys Pyle, as Secretary of State of South Dakota. Judgment
for plaintiffs.

*M. G. Luddy,* of Sioux Falls, and *McNamee, O'Keeffe &
Stephens,* of Pierre, for Plaintiff.

*Buell F. Jones,* Attorney General, and *Ray F. Drewry,* Assist-
ant Attorney General, for Defendant.

GATES, J.   This action was brought in this court to enjoin
the secretary of state from filing, recognizing, or acting upon a
referendum petition presented to her on June 2, 1927, by Ben C.
Ash.   Said petition seeks to refer to popular vote at the next
general election in November, 1928, the act of the regular session
of the 1927 Legislature known as Senate Bill 104, and designated
in the official edition of the Session Laws of 1927 as chapter 54.
Said chapter is an act relating to banks, the title of which herein-
after appears.   The secretary of state answered the complaint, and
as a part of her return submitted affidavits of R. O. Richards,

Tom Ayres, and Ben C. Ash. Testimony was taken in the form
of depositions and in open court, and on June 20, 1927, the cause
was submitted to the court upon the record and upon oral ar-
guments.

The broad question before us is whether the said referendum
petition constitutes a valid petition with a sufficient number of
signers. If it does, then the secretary of state must file it, and
the operation of said chapter 54 will be suspended until its adop-
tion by popular vote in November, 1928, and until the canvass of
such vote. If it does not constitute a valid petition, then the sec-
retary of state must not file it, and said chapter 54 will take effect
and be in force on and after July 1, 1927.

The sections of Rev. Code 1919, enacted to carry into effect
the referendum feature of article 3, § 1, of the Constitution, are
as follows:

Sec. 5069. *Enactments Submitted to Vote of Electors.* Any
law which the Legislature may have enacted, except one which
may be necessary for the immediate preservation of the public
peace, health or safety or support of the state government and its
existing public institutions, shall, upon the filing of a petition as
hereinafter provided, be submitted to a vote of the electors of the
state at the next general election. Such petition shall be signed
by not less than five per cent of the qualified electors of the state,
and each elector shall add to his signature his place of residence,
business, post office address, and date of signing, which petition
shall be filed in the office of the secrtary of state within ninety
days after the adjournment of the Legislature which passed such
law, and if a majority of all the votes cast both for and against
the law be for the law, it shall become a law of the state, in force
and effect on and after the day upon which the canvass of the vote
thereon has been completed by the state canvassing board.

"Sec. 5070. *Required Number of Petitioners Determined.* The
total number of votes cast for Governor, at the last preceding
general election, shall for the purposes of this article, be the basis
for determining the number of petitioners required."

"Sec. 5072. *Qualifications of Petitioner, Penalties.* Every
person who is a qualified elector may sign a petition to propose a
measure or submit a law, and any person signing who is not a
qualified elector of this state, shall, upon conviction thereof, be

fined in any sum not to exceed five hundred dollars or may be imprisoned in the state penitentiary for a term not to exceed five years; and the court may, in its discretion, impose both such fine and imprisonment.

"Sec. 5073. *Petition Liberally Construed.* The petitions herein provided for shall be liberally construed so that the real intention of the petitioners may not be defeated by a mere technicality. It shall not be necessary that one paper shall contain all the signatures, but a single petition may be made up of one or more papers, each having the requisite heading. Separate papers, in proper form and duly signed, may, before filing, be bound together and shall be regarded as one petition and shall be sufficient if the aggregate number of signatures upon all is not less than the number required by this chapter. Blank lines upon additional sheets securely fastened to a top sheet, having the prescribed heading, may be used in obtaining signatures, and shall be regarded, together with the top sheet having the proper heading, as one paper. The place of residence, business and post office address of a petitioner may be indicated by ditto marks, if they are the same as those last written above his signature.

"Sec. 5074. *Verification of Petition.* Every person who shall circulate and secure signatures to a petition to initiate or submit to the electors any law under the provisions of section 1, article 3, of the Constitution, shall, before filing said petition with the officer in whose office the same is by law required to be filed, make and attach to the petition an affidavit in the following form, which he shall subscribe and swear to before some officer qualified to administer oaths and having an official seal:

"State of South Dakota, County of ———, ss.:

"I, ———, being first duly and solemnly sworn, on my oath state, that I am a qualified voter of the state of South Dakota. That I am acquainted with all the persons whose names are affixed to the above and foregoing paper and know that each one of said persons signed said paper personally and added thereto his place of residence, his business, his post office address and date of signing. That each and all of said persons are residents and qualified electors of the county of ———, state of South Dakota. That each of said persons signed said petition with full knowledge of its contents. That I have received no compensation whatever or

promise of compensation for my services in circulating said petition.                                                    ——————————.

"Subscribed and sworn to before me this —— day of ——— 19——.                                           ————————————.''

It is conceded that this petition, to be valid, must contain the signatures of 9,192 electors of this state. Section 5070, supra.

The petition as numbered before being presented to the secretary of state purports to contain 9,736 signatures. Errors in numbering, by repeated numbers, and by signatures not numbered, would increase this total to 9,963. But, on the other hand, by errors in numbering such total is reduced in the sum of 608; that is to say, there are by actual count only 9,355 signatures to the petition.

[1-3] Further deductions must be made. Ten of the counted signatures are upon a petition for the referendum of Senate Bill 60 (chapter 113, Laws 1927). Two hundred and one signatures should be stricken because of duplicate or triplicate signatures by the same elector. Ninety-nine signatures should be stricken because such signatures are not verified. Section 5074, supra. This reduces the number of signatures to 9,045, which sum is 147 short of the required number.

Among the many other points of objection to the petition raised by plaintiffs there are at least several which merit serious consideration.

One R. O. Richards of Huron caused to be printed and circulated petitions containing the following heading:

"Petition for Referendum.

"We, the undersigned electors of the state of South Dakota, do hereby petition that the act of the Legislature of the state of South Dakota entitled 'An act entitled, "An act to improve and stabilize the banking system; to provide for regulation and control of banks and banking, amending the Depositors' Guaranty Fund Law; providing for the establishment of separate guaranty funds for the several banks for the protection of depositors and creditors; continuing the depositors' guaranty fund commission; extending to the superintendent of banks and the depositors' guaranty fund commission enlarged and increased powers of supervision and control over the officers of banks, and the management and administration of banks and fixing the compensation of the members of such commission; and to amend section 9005 of

the Revisd Code of 1919 as amended by chapter 119, of the Session Laws of 1919; and to amend sections 9009 and 9010 of the Revised Code of 1919; and to amend section 9011 of the Revised Code of 1919 as amended by chapter 122 of the Session Laws of 1919; and to amend section 9015 of the Revised Code of 1919; and to amend section 9016 of the Revised Code of 1919 as amended by chapter 123 of the Session Laws of 1919; and to amend section 9017 and 9018 of the Revised Code of 1919; and to amend section 9020 of the Revised Code of 1919 as amended by chapter 134 of the Session Laws of 1921; and to repeal section 9013, 9021, 9024, 9026, 9028, 9029, 9030, 9031, of the Revised Code of 1919," ' which said act has for its object, among others, the repeal of the present existing system of guaranty of bank deposits in the state of South Dakota, and known as Senate Bill No. 104, passed by the Senate on the 10th day of February, 1927, and passed by the House of Representatives and amended February 21, 1927, and House amendments concurred in by the Senate February 25, 1927, and approved by the Governor of the state of South Dakota March 4, 1927, be referred and submitted to a vote of the electors of the state of South Dakota at the next general election."

The procedure followed by him was to attach to the sheet containing the heading several sheets containing blank lines as provided in section 5073, supra, and upon the last sheet was a printed form of verification. These were fastened together in a cover.

One Tom Ayres of Sioux Falls caused to be printed and circulated petitions containing the following heading:

"Petition for Referendum—Senate Bill 104.

"We, the undersigned qualified electors of the state of South Dakota, do hereby petition that the act of the Legislature of the state of South Dakota, known as Senate Bill No. 104, entitled" (here follows the title to said act as in the Richards heading) "which said bill was passed February 25, 1927, and was approved by the Governor on the 4th day of March, 1927, be submitted to a vote of the electors of the state of South Dakota at the next general election."

The difference in the headings of the Richards and Ayres petitions will be disclosed by comparison. All of the Richards petitions and Ayres petitions were ultimately assembled at Huron

and securely bound together as one petition, under the direction of Mr. Richards. Section 5073, supra.

[4] The larger part of the Ayres petitions when signed were assembled by Mr. Ayres, who testified that he cut off the headings and pasted the "Richards headings" thereon. He treated the remainder of the Ayres petitions in like manner at Huron, in the presence of Mr. Richards. The number of signatures upon the petitions so tampered with amounts to 3,129. This tampering was wholly without the pale of law and order, and such signatures cannot be counted. In Fox v. Board, 49 Cal. 563, petitions having identical headings were circulated. Some of the headings were detached and the lists of signatures attached to other identical petitions. The court said:

"The petition presented to the board must be that petition which was signed by the petitioners. Both signature and presentation are necessary. In this view the identity of the instrument presented as being that which came from the hands of the petitioners is indispensable. To say that, though the signers did not affix their names to the petition presented, they did affix them to another and similar petition not presented to the board, is no answer; nor does it satisfy either the terms of the statute of its obvious policy, which was to shut the door against frauds which would inevitably occur if the practice of detaching signatures from one petition and attaching them to another were permitted."

In concurring therein, Crockett, J., said:

"Whether they signed another paper with a similar heading, will rest entirely in parol, and can only be ascertained by oral proofs. If such proof will suffice as to a portion of the petitioners, it will be equally effective as to all. We might then have the case of a petition, never in fact signed by any one; and the omission could be supplied only by oral proof that the petitioners had signed other similar petitions. If a practice of this kind was tolerated, it would open the door to numerous frauds, and would result in substituting oral proof for that which the statute requires to be in writing."

See, also, People ex rel Wells v. Town of Berkeley, 102 Cal. 298, 36 P. 591, 23 L. R. A. 838. In State ex rel Doud v. Lesueur, 136 Mo. 452, 38 S. W. 325, the petitions were not identical but of similar effect. The court said:

"We consider it too plain for argument that the secretary rightfully refused to count the 92 names which had been signed to another and different instrument, and had been cut off and attached to the one presented to him. To permit this kind of practice would open the door to the grossest frauds, and violate all the analogies of the law which forbids parties to tamper with or make material alterations in written instruments. The objection is not one merely of form. It is of the very essence of such a petition that it be presented just as the elector signed and acknowledged it."

In Boxley v. Mackaman, 46 S. D. 241, 191 N. W. 1017, the facts were the converse of those here presented, but the reasons underlying that decision were the same as here. Therein we quoted with approval the foregoing excerpt from the opinion of Crockett, J.

[5] In five instances Richards petitions were returned to Mr. Richards without verification. Instead of returning the petitions for verification, he returned merely printed forms of verification for execution, and upon their return to him he pasted them, as testified by him, upon the appropriate petitions. Such practice is also beyond the pale of law and order. Boxley v. Mackaman, supra. The number of signatures so affected is 229. In one of these five cases of pasted verifications, the verification is inserted after two sheets of signatures. The person making the affidavit testified that he circulated that petition and secured the signatures on the first sheet but did not secure the signatures of those upon the second sheet, did not know them, never saw the petition after the first page was filled, and did not know that his affidavit was to be used other than for the list of signatures he secured. In another case the pasted verification appears after four pages of signatures. The person making the affidavit testified that he secured only the signatures on the first sheet and did not obtain those on the second, third, and fourth sheets. These instances suffice to show that the verification requirement of section 5074, supra, goes to the substance and is not a mere technical requirement.

[6] In many cases it appears from the testimony that the signer did not write in his own handwriting, his residence, business, post office address, and date of signing, or some of them. In addition to those instances to which attention was called in the

testimony, there are hundreds of instances where the most casual inspection shows that the signer did not fill out the other data. The difference·in handwriting between that of the signature and of the other data is clearly apparent, even to a nonexpert in handwriting. Of course such signatures cannot be counted because the law requires the signer to do the whole job himself. Harris v. King, 21 S. D. 47, 109 N. W. 644; Lucas v. Ringsrud, 3 S. D. 355, 53 N. W. 426. No one is authorized by law to doctor up a sick petition.

[7] While it is true that section 5073, supra, requires that referendum petitions shall be liberally construed so that the real intention of the petitioners may not be defeated by a mere technicality, yet it was not meant thereby that substantial compliance with the law can be ignored. Mellquist v. Dakota Printing Co., 51 S. D. —, 213 N. W. 949. All of the deficiencies herein pointed out are more than mere technicalities. They show distinct violation of substantial requirements.

In view of the case as made by plaintiffs, the petition as presented is several thousand short of the requisite number of valid signatures.

The judgment of the court will enjoin the secretary of state from filing, recognizing, or acting upon it.

CAMPBELL, P. J., and POLLEY, SHERWOOD, and BURCH, JJ., concur.