STATE OF NORTH DAKOTA EX REL. HUSTON THOMPSON, P. E. Byrne, G. S. Wooledge, D. J. McLennan, L. N. Torson, J. G. Crites, D. E. Clark and Mrs. E. B. Page, Relators, v. ROBERT E. BYRNE, as Secretary of State of the State of North Dakota, Respondent.

(219 N. W. 116.)

**Elections — nominating petitions at presidential primary election must be signed by at least 500 party voters.**

A nominating petition, under § 910 of the Compiled Laws of 1913 (relating to candidates for president, presidential electors, delegates to national conventions and national committeemen), must be signed by not less than five hundred party voters of the political party in which the nomination is sought.

Opinion filed March 9, 1928.

Elections, 20 C. J. § 107 p. 111 n. 56; § 108 p. 111 n. 61.

Original application for writ of mandamus directed to the above named respondent.

Writ denied.

*F. O. Hellstrom,* for relator.

*George F. Shafer,* Attorney General, and *George I. Reimestad,* Assistant Attorney General, for respondent.

PER CURIAM. This is a proceeding brought to compel the secretary of state to cause the names of the relators to be printed on the Democratic primary ballot to be voted on at the presidential primary election on the 20th of March, 1928,—the name of Huston Thompson to appear as an aspirant for election for the office of president, and the remaining relators to appear as candidates for election as delegates to the national convention of such party. The application for a writ of mandamus is verified by the attorney for the relators. It contains, among other allegations of fact, the allegation that "in truth and in fact, the said petitions so filed with the said respondent contain names of five hundred (500) Democratic electors and party voters." This allegation was controverted in the answer and return, thus presenting an issue of fact. Upon the hearing the original petitions were produced. They bear upon their face abundant evidence of a hurried effort, made during the closing period of the time for filing petitions, to secure the necessary number of names. It is unnecessary, however, to comment upon the evidence afforded by the petitions themselves that the requisite number of qualified electors did not in fact petition. It is sufficient to say that the issues of fact as to the number of electors petitioning must be decided in favor of the respondent, as there are not upon any of such petitions the names of as many as five hundred petitioners. The attorney for the relators, though verifying the allegation of the application as above indicated, upon argument stated that he had not seen the petitions. Hence, he was in no position to controvert the allegations in the answer. However, he was not laboring at any disadvantage, for it would require resort to radical measures to perfect the petitions in question; and, to use the language of the supreme court of South Dakota (O'Brien v. Pyle, — S. D. —, 214 N. W. 623), "No one is authorized by law to doctor up a sick petition." The issues of fact must be found in favor of the respondent.

With the issues of fact so decided, the sole question presented is as to the number of petitioners required. Section 910 of the Compiled

Laws of 1913, with reference to the placing upon the ballot of the names of aspirants of a political party for election to the office of president and for delegates, provides that:

They "shall be printed on the party nominating ballot, provided for that purpose, and the ballot shall be marked and the votes shall be counted; canvassed and returned under the same conditions as to names, petitions and other matters so far as the same are applicable, as the names and petitions of party aspirants for the party nominations for the office of governor and of the United States senator in Congress are, or may be by law required to be marked, filed, counted, canvassed, and returned; provided, that aspirants for such presidential nominations need not file any personal petition nor signature; . . . that petitions to place on the nomination ballot the names and aspirants for such office or delegate to said national convention, presidential elector and national committeeman to be chosen and elected, as provided herein, shall be sufficient if they contain a number equal to one per cent of the party vote in the state at the next preceding election for representatives in Congress, or not less than five hundred signatures of party voters."

It is first argued, in behalf of the relator who was represented as an aspirant for president, that there is no requirement touching the number of petitioners. We think the statute is not susceptible of such a construction. The language of the statute, with reference to the printing of names upon the ballot in response to petitions, is as clearly applicable to the office of president as to the other offices and delegates. There is an exception, however, in favor of such office to the effect that an aspirant need not file any personal petition nor signature, as is required in the case of a party aspirant for governor or United States senator. The fact that such exception is in the statute is a further indication that the name is to be placed on the ballot in response to a petition, and the sufficiency of the petition, so far as the number of names thereon is concerned, is clearly to be tested by the same provision that tests the sufficiency of other petitions in this respect.

It is next argued that a petition is sufficient as to the number of names if it contain 1 per cent of the party vote at the next preceding election for Representatives in Congress, although this number may be less than five hundred. It is pointed out that, in fact, the petitions

in the instant case were found by the secretary of state to have contained a number in excess of one per cent of the party vote at the preceding election. In support of this contention counsel refers to the general primary election law, which had been passed some four years before the presidential primary law and which is referred to in the latter act. He draws particularly upon that provision of the General Primary Law (Comp. Laws 1913, § 853), wherein the petition is required to contain 3 per cent of the total vote cast for the candidate of a party for the same position at the last general election, provided that in no case not more than three hundred names shall be required. It is argued that it is absurd to require as many as five hundred names to a petition antecedent to a presidential primary election in which 1 per cent of the party vote is the basic requirement while permitting a petition containing three hundred names to be sufficient in a general primary election where 3 per cent is the basic requirement. This is an argument as to what the law ought to be rather than what the law is. It would be more properly addressed to the legislature than to the court. If the requirements seem unreasonable or illogical, the reply is that the legislature has a right to be inconsistent. In so far as the pre-existing requirements for petitions under the general primary law throw any light upon the question of statutory construction before us, they indicate rather that an entirely different test was to be applied in the case of petitions antecedent to the presidential primaries. With the general primary requirement before it, the legislature deliberately changed the percentage from 3 per cent to 1 per cent of the party vote and used altogether different language regarding a definite maximum or minimum requirement. This is indicative of a purpose to require 1 per cent in every case, and the fact that no proviso was added to the effect that in no case more than a certain number of names should be required, as in the general primary law, is some indication that there was to be no such measure of sufficiency.

It will be noticed that the statute does not prescribe any minimum requirement below 1 per cent of the party vote; so that, for illustration, if the party vote for representatives in Congress should have been 150,000, the petition must contain 1500 names. The clause "or not less than five hundred signatures of party voters" is not inserted here to lighten the burden upon the candidate. To have this effect it would

have been necessary to have provided, as in the general primary law, that *not more,* instead of *not less,* than five hundred signatures should be required. Hence, the clause "or not less than five hundred signatures of party voters" must have been intended to serve an altogether different purpose than that of prescribing a general minimum requirement. In the connection in which it is used in this statute, it can have no effect whatsoever except as prescribing an absolute minimum where 1 per cent of the party vote is less than five hundred. We cannot assume that the words have been used to no purpose whatsoever, and it is elementary that a statute must be so construed, where possible, as to give effect to all of its provisions. We are of the opinion that the meaning of the statute is that the petition, to be sufficient, must contain a number equal to 1 per cent of the party vote but in no event less than five hundred names.

Writ denied.

NUESSLE, Ch. J., and BIRDZELL, BURKE, CHRISTIANSON, and BURR, JJ., concur.