STATE ex rel COON, Plaintiff, v. MORRISON, Secretary of State, Defendant.

(249 N. W. 318.)

(File No. 7587. Opinion filed June 27, 1933.)

O'Keeffe & Stephens, of Pierre, for Plaintiff.

Walter Conway, Attorney General, and T. E. Eastman, J. T. McCullen, Jr., and R. F. Drewry, Assistant Attorneys General, for Defendant.

POLLEY, J. The 1933 session of the Legislature enacted a certain law entitled: "An Act Abolishing the Railroad Commission as Now Constituted and Creating the Office of Utility Commissioner; Transferring the Powers and Duties of the Railroad Commission to the Utility Commissioner, and Repealing Sections 9492, 9493, 9494, 9495, 9496, 9497, 9498, 9499, 9500, 9501, 9502, and 9553, and All Acts Amendatory Thereto and All Other Acts or Parts of Acts in Conflict Herewith."

Said law was approved by the Governor on the 4th day of

March, and is now chapter 166 of the Session Laws of 1933, and will go into effect on the 1st day of the coming July unless the same is suspended by the referendum petition that is the subject of this action.

On the 1st day of June there was tendered to the defendant, as secretary of state, a certain petition purporting to bear the signatures of 17,018 of the electors of this state asking that the said act of the Legislature "be referred and submitted to a vote of the electors of the State of South Dakota, at the next general election, to be held in the State of South Dakota"; that upon examination of said petition by defendant she refused to file the same in her office.

On the 3rd day of June, A. D. 1933, and after defendant had so refused to file the said petition, the relator above named applied to this court for a peremptory writ of mandamus requiring the said defendant as such secretary of state to accept the said petition and to file the same as a valid referendum petition and submit the said legislative act to a vote of the electors at the next general election.

Upon the filing of such application, an order was issued citing the defendant to show cause why such permanent writ of mandamus should not issue. On the return day named in said order, the defendant appeared and filed her answer, in which she alleges that of the 17,018 names attached to said petition some 5,463 of said signatures were not entitled to be counted or considered as petitioners on the said petition. This contention is based upon the fact, among others, that appearing upon said petition are the names of divers and sundry persons, amounting in all to several hundred, who had not added to their signatures, their places of residence, their business, their post office address, and the date of signing said petition, as required by the provisions of section 5067, Rev. Code 1919.

Whether the names questioned under this part of the answer should be rejected, it is not necessary to determine. The total number of names on the petition is 17,018. The number of signers required on said petition is 14,206. This leaves a surplus of 2,812, so that, if all the names questioned as above were rejected, there would still be many more than the required number of names on said petition.

For her defense the defendant relies principally upon the following facts and circumstances, which must be stated in order to understand the various allegations of the answer; keeping in mind that the "petition shall be liberally construed, so that the real intention of the petitioners may not be defeated by a mere technicality." See section 5073, Rev. Code 1919.

The petition is composed of many sections, circulated by different persons in different parts of the state. Each of such sections is headed by the petition required by section 5067, Rev. Code 1919, and has attached thereto the affidavit of the person who secured the signatures thereon as required by section 5074, Rev. Code 1919. These sections were then collected and assembled—each section was given a number, and all of them were fastened together into one completed petition containing 274 sections, each section being numbered consecutively from 1 to 274. The answer is too long to be set out in full, but the following paragraph is typical of the many paragraphs contained in the answer:

"6. That on Petition No. 17 bearing the purported signatures of one hundred thirty-eight (138) persons, one R. W. Gilmore, the alleged circulator thereof, made sworn affidavit thereon that each of said signers were residents and qualified electors of the County of Pennington in South Dakota, whereas one of said signers, M. J. McClellan, who signed said petition on line 6 thereof, was a resident of the town of Kennebec, as appears from said petition, and that the said town of Kennebec is not in Pennington County but is in the County of Lyman; that another of said signers, M. A. Sundown, who signed said petition on line 127 thereof was a resident of the town of Wood, as appears from said petition, and that said town of Wood is not in Pennington County, but is in the County of Mellette; that another of said signers whose name is not legible but who signed said petition on line 126 thereof was a resident of the town of St. Francis, as appears from said petition, and that the said town of St. Francis is not in Pennington County but is in Todd County; that another of said signers, W. P. Haley, who signed said petition on line 139 thereof was a resident of the city of Huron, as appears from said petition, and that the city of Huron is not in Pennington County but is in the County of Beadle. That thereby said affidavit was false and untrue, and knowingly so, and none of said 138 names appearing thereon were or are entitled

to be counted. Affiant further alleges that the signatures at lines 8 and 109 of said petition are not legible; that the signer at line 55 did not list his business or occupation, and the signer at lines 102 and 105 did not list their places of residence, all contrary to the provisions of Section 5067 of the Code, and that therefore said five (5) signatures were not and are not entitled to be counted."

From the contents of this paragraph it appears to be the theory of defendant that, because of the seven alleged defective signatures on this section of the petition, the remaining 131 petitioners whose names appear thereon and who have concededly complied with all requirements of the law must be disregarded.

Defendant's theory of defense is based on what was said by this court in Morford v. Pyle, 53 S. D. 356, 220 N. W. 907, but what is said in that case is not applicable in this. That case had been tried in the circuit court, and the fraudulent matters referred to in our opinion had been established by the evidence taken at the trial, while this case is submitted on the face of the petition, and the defendant, in determining whether the petition is entitled to be filed, acted in a purely ministerial capacity, and is limited to a consideration of such matters only as are apparent on the face of the petition itself. She is not acting in a judicial or quasi judicial capacity, but purely in a ministerial capacity. For this reason we denied defendant leave to take testimony for the purpose of attacking the sufficiency of the petition for reasons not apparent on the face thereof. The secretary of state, acting in a ministerial capacity, must presume, until it is proven otherwise, that the affidavit attached to the petition is legal and not fraudulent. The mere fact that it appears on the face of the petition, following the signature of a signer, that his residence is in a county different than that shown in the affidavit, does not establish that the affidavit is fraudulent. It is possible that the signer of the petition did not state correctly the county in which he resided, or there might be other facts and circumstances which would establish that the affidavit was in fact not fraudulent. The petition contains more than the required number of names and all the data required by statute.

"The presumption is that petitions which are circulated, signed, and filed are valid. People interested as the circulators of these petitions, and the others who sign them, are acting in the capacity

of legislators. They are members of the largest legislative body in the state, and, where so acting, do so in a public or at least a quasi public capacity, and when so acting the law presumes the validity and legality of their acts, and even though it should be claimed that they were acting simply in a private capacity, until overcome by proof, their acts, involving the performance of ministerial or administrative duties, such as those performed in the circulation and signing of these petitions, are presumed to be legal and not fraudulent." In re Initiative Petition No. 23, 35 Okl. 49, 127 P. 862, 866. See, also, Watkins v. Havighorst, 13 Okl. 128, 74 P. 318.

This case should be governed by what is said by this court in the case of State ex rel McNulty v. Glasner, 33 S. D. 241, 145 N. W. 547, 548. In that case the relator undertook to file with the defendant as secretary of state a certificate placing his name on the ballot as a minority candidate for Congress. The certificate was regular in form, it was sufficient in all respects as a nominating certificate, and disclosed no disability on the part of the relator to be a candidate for and hold the office for which he was a candidate. The defendant refused to file said certificate and certify the name of the relator to the various county auditors. The relator sued out an alternative writ of mandamus, and in his answer thereto, the defendant intimated that it appeared from the petition filed by the relator for a writ of mandamus that the relator was ineligible and disqualified under the Constitution to hold or to be voted for as a candidate for said office. In reply to this contention by the defendant, the court said: "In the performance of his duties, the Secretary of State, in certifying the names of the proposed candidates to the several county auditors, acts only in a ministerial capacity, and, when such a certificate is presented to him in due form of law, he had no judicial or quasi judicial power to inquire into or determine the facts recited in the certificate of such proposal committee to ascertain their truth or falsity or to determine whether such certificates are constitutional or not." And that the secretary of state had no other alternative or power than to file the said certificate and certify the same to the county auditors. This does not conflict with what is said in State ex rel Goodhope v. Leyse, 60 S. D. 384, 244 N. W. 529; Id., 61 S. D. 153, 246 N. W. 635. That case involved the duties of the city auditor upon

the filing of a municipal recall petition, and the duties of the city auditor under the recall statute (section 6332, Rev. Code 1919) are pointed out in the opinion in the Leyse Case.

The writ will be granted as prayed for in the application. The referendum petition will be filed by defendant in her office, and, unless prevented by appropriate action by interested parties within the time allowed by law, the same will be certified to the county auditors to be submitted to the electors at the next general election.

RUDOLPH, P. J., and WARREN, J., concur.

CAMPBELL and ROBERTS, JJ., concur in result.