Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
In The Matter of the Grievance of:
TRUDY SCHROEDER,
Appellant,
v.
DEPARTMENT OF SOCIAL SERVICES,
Appellee.
[1996 SD 34] 
South Dakota Supreme Court
Appeal From The Sixth Judicial Circuit, Hughes County, SD
Hon. James W. Anderson, Judge
#19237 -- Affirmed 
Thomas P. Tonner, Tonner, Tobin & King, Aberdeen, SD
Attorney for appellant. 
James E. Carlon, Pierre, SD
Attorney for appellee. 
Submitted On Briefs Jan 10, 1996; Opinion Filed Mar 27, 1996 
KONENKAMP, Justice. 
[Â¶1] We earlier remanded this matter for additional findings of fact and conclusions of law. Schroeder v. South Dakota Dept. of Social Services, 529 NW2d 589 (SD 1995) (Schroeder I). Upon entering specific findings, the circuit court again reversed the Career Service Commission's decision to reinstate Trudy Schroeder as an employee with the South Dakota Department of Social Services (DSS). Schroeder appeals and we affirm. 
FACTS 
[Â¶2] The facts are summarized in Schroeder I: 


Schroeder was employed by DSS for fourteen years; first as a social worker, then a line supervisor and, finally, a district program supervisor. During most of her career with DSS, Schroeder displayed exemplary work performance. However, in 1991, problems arose. 
Schroeder assumed a new position as District Program Supervisor (DPS) in 1991. Thereafter, her superiors became concerned about her management style and inability to get along with her co-supervisor. Based on these problems, Schroeder was given an unsatisfactory performance rating in two written evaluations. She was put on a formal work improvement plan on April 20, 1992. This plan contained detailed steps of how Schroeder could improve her performance. On July 16, 1992, DSS contended Schroeder failed to meet plan requirements resulting in her termination. 
Schroeder appealed her termination to the Commission. Commission, an administrative board of appeals, is granted authority to adjudicate disputes between state employees and agencies. After hearing two days of testimony from over twenty-five witnesses, Commission entered detailed findings of fact and conclusions of law. Incorporated in its findings, Commission determined that Schroeder had difficulty adapting to the management role required of a DPS and was unable to develop a good working relationship with her co-supervisor. Commission noted [96 SDO 227] Schroeder's unsatisfactory work performance rating and noncompliance with a work improvement plan. Furthermore, Schroeder was found to have acted inappropriately by involving co- workers in her employment controversy. 
Commission agreed with DSS that Schroeder's work performance was unsatisfactory. However, Commission could not find that Schroeder's misdeeds constituted "just cause" for termination. It held that DSS had not carried its burden of proving that Schroeder had "violated any department, division, bureau or institution regulation, policy, or order or failed to obey any oral or written directions given by a supervisor or other person in authority." Commission further stated that while Schroeder's actions "were not always professional or appropriate, they did not amount to insubordination nor were they disruptive of the morale and efficiency of the department." Consequently, Commission reversed DSS" decision to terminate Schroeder and reinstated her without back pay or benefits. 
DSS appealed Commission's reinstatement order to the circuit court which reversed Commission's decision. The circuit court held "just cause" existed for termination under Administrative Rule 55:01:12:05(4)(6) and (7). The court further held Commission clearly erred in finding that Schroeder was not insubordinate. 
Id. at 590-91 (footnotes omitted). 
[Â¶3] After remand the circuit court ruled: (1) the Commission was not clearly erroneous in finding Schroeder's work was unsatisfactory and that she did not comply with the work improvement plan; (2) the Commission was clearly erroneous in finding Schroeder did not disrupt the efficiency and morale of the Department; (3) the Commission was "arbitrary" in concluding Schroeder did not violate written and oral directions from her supervisor and was not insubordinate; (4) her actions established just cause for discipline;{1} and (5) once just cause was established the Department had the discretion to choose the proper discipline and the Commission could not interfere with that managerial decision. The circuit court reinstated the Department's decision to terminate. Schroeder appeals, asserting six issues, which we condense into three: 


I. Whether the Commission was clearly erroneous in finding Schroeder's work performance unsatisfactory and in finding she failed to comply with her work improvement plan. 
II. Whether in reinstating her the Commission erred as a matter of law. 
III. Whether Schroeder was afforded due process. 
STANDARD OF REVIEW 
[Â¶4] We review administrative decisions the same as the circuit court. Factual determinations can only be overturned if we find them to be "clearly erroneous" in light of the entire evidence. SDCL 1-26-36. Unless we are left with a definite and firm conviction a mistake has been made, the findings must stand. The question is not whether there is substantial evidence contrary to the Commission's findings but whether there is substantial evidence to support those findings. Conclusions of law, on the other hand, are fully reviewable, as are mixed questions of fact and law which require the application of a legal standard. Schuck v. John Morrell & Co., 529 NW2d 894, 896 (SD 1995) (citations omitted). 
ANALYSIS 
[Â¶5] I. Unsatisfactory Performance and Failure to Comply with Work Improvement Plan 
[Â¶6] The record amply supports the [96 SDO 228] Commission's finding that Schroeder's work performance was unsatisfactory.{2} Nevertheless, Schroeder believes DSS should not have been allowed to submit evidence of specific instances of unsatisfactory work performance during times when she received satisfactory performance evaluations. She would limit scrutiny of her performance to those time periods when she received an unsatisfactory evaluation. Work reviews are not conclusive proof of satisfactory performance, but merely serve as evidence to be weighed along with other testimony and exhibits. Peery v. South Dakota Dept. of Agriculture, 402 NW2d 695, 697 (SD 1987). The Commission properly allowed DSS to submit specific factual instances of Schroeder's misbehavior during those periods when she received satisfactory evaluations. Considering the entire record, we are not left with a firm and definite conviction the Commission was clearly erroneous in its findings about her work performance. In re Hendrickson's Health Care, 462 NW2d 655, 657 (SD 1990). 
[Â¶7] On April 20, 1992, DSS put Schroeder on a sixty-day work improvement plan in which deficiencies and steps necessary to correct them were delineated. The Commission was not clearly erroneous in finding Schroeder "failed to successfully comply" with this plan. While she made some attempt to improve during the plan period, she also resisted efforts to correct her behavior: she angrily yelled at her supervisor; she was verbally abusive to others; she conducted an unauthorized community survey; and she disobeyed her supervisor's directive about involving other employees in the ongoing inter-office controversy. After considering all the evidence, the Commission was in the best position to weigh competing testimony to arrive at this determination. We find no error. 
[Â¶8] II. Commission's Decision to Reinstate Schroeder 
[Â¶9] Although the Commission found DSS justified in giving Schroeder an unsatisfactory performance rating and found she failed to comply with her work improvement plan, it ruled DSS had not carried its burden of proving "just cause" to discharge her. Whether "good cause" exists to warrant discipline is fully reviewable. Hartpence v. Youth Forestry Camp, 325 NW2d 292, 296 (SD 1982) (finding of "incompetence"). The following pertinent administrative rules provide grounds for disciplining an employee: 


55:01:12:05 (4) The employee has violated [96 SDO 229] any department, division, bureau or institution regulation, policy, or order or failed to obey any oral or written directions given by a supervisor or other person in authority; 
55:01:12:05 (6) The employee has been guilty of insubordination; 
55:01:12:05 (7) The employee disrupts the efficiency or morale of the Department. 
Administrative regulations are subject to the same rules of construction as are statutes. Hieb v. Opp, 458 NW2d 797, 800 (SD 1990); Hartpence, 325 NW2d at 295. When regulatory language is clear, certain and unambiguous, our function is confined to declaring its meaning as clearly expressed. U.S. Communications v. Public Utilities Comm'n., 505 NW2d 115, 123 (SD 1993)(citing Appeal of AT&T Information Systems, 405 NW2d 24 (SD 1987) (dealing with statutory interpretation)). 
[Â¶10] The Commission found "as a matter of fact" Schroeder's actions were not insubordinate. Deciding whether an employee's acts constitute insubordination is a mixed question of fact and law. See Hartpence, 325 NW2d at 296. "Insubordination" is not defined within the administrative regulations, but its ordinary and plain meaning is well known: "not submitting to authority; disobedient." Webster's New World Dictionary 731 (2dCollegeEd 1980). Many of the Commission's findings clearly reflect Schroeder's "insubordination." Additionally, the Commission found: 


At both the April 8 and May 13, 1992 meetings, involving Schroeder, her supervisors and Paula Hurd, Schroeder became upset and angry. Schroeder's conduct toward her supervisors in regard to the work improvement plan was obstinate and argumentative. 
Because the Commission's legal conclusion of no insubordination contradicts the factual findings, it erred as a matter of law. 
[Â¶11] The Commission made sufficient findings to establish that Schroeder violated ARSD 55:01:12:05(4) by disobeying directions from a supervisor.{3} Its legal conclusion to the contrary was error. Likewise, the Commission found Schroeder did not disrupt "efficiency and morale." Yet by its own discernment, Schroeder held "a critical management level position," had "difficulty adapting to the management role," was "unable to develop a good working relationship with her 'Co-DPS'" and, contrary to orders, involved other employees in the controversy. It found Schroeder "verbally abusive," yelling and expressing anger at superiors and a subordinate. The Commission also noted "foster parents who had involvement with Schroeder's office," attended a meeting on "problems in the Sioux Falls office including a lack of positive leadership by Schroeder in her role as a DPS." These foster parents expressed concerns about "use of intimidation, lack of professionalism, and [96 SDO 230] inter-office conflicts," which affected their relationship with the Sioux Falls office. The undoubted import of these findings was that morale and efficiency were affected. 
[Â¶12] DSS has discretion, pursuant to ARSD 55:01:12:03, to take the disciplinary action it deems necessary (suspension without pay, dismissal, demotion, or reduction in salary). In reviewing a disciplinary action, the Commission's authority is circumscribed once it finds "good cause." 


In resolving grievances involving the discipline of an employee, the career service commission shall determine and decide whether the action was made for good cause. If the commission finds that the action was made for good cause, it shall enter an order upholding the decision of the appointing authority disciplining the employee. If, however, the commission finds that the action was made without good cause, it shall enter an order reversing the decision of the appointing authority. 
SDCL 3-6A-38.1 (emphasis added). Interpreting similar statutory language, we have held the Commission has no authority to modify disciplinary decisions, rather its function is to conduct a hearing comporting with due process requirements to determine if good cause exists for any disciplinary action. Deuter v. South Dakota Highway Patrol, 330 NW2d 533, 536 (SD 1983); Drovdal v. State Dept. of Public Safety, 255 NW2d 437, 439 (SD 1977). Upon determining "good cause" for discipline, the Commission cannot supplant its judgment on the form of discipline chosen. 


We cannot believe that the legislature intended that the Career Services Act be interpreted and administered in a manner that would have the effect of immunizing employees covered by the provisions of the Act from good faith managerial decisions, based upon good cause, designed to promote the efficient operation of the executive branch of state government. 
Appeal of Miller, 283 NW2d 241, 243 (SD 1979). The Commission must apply the law before it, including its own administrative rules. Findings of fact must support conclusions of law. Hartpence, 325 NW2d at 297. The Commission's decision to reinstate Schroeder was not supported by its own factual findings, an error as a matter of law. We thus affirm the circuit court's decision to reverse. 
[Â¶13] III. Due Process 
[Â¶14] Schroeder alleges a denial of her due process rights because she was directed not to discuss with her subordinates and co-workers the disciplinary actions taken against her. Consequently, she felt unable to adequately prepare a grievance concerning her unsatisfactory work performance evaluation. Despite this claim, many witnesses testified on her behalf and she submitted thirty affidavits contradicting evidence submitted by DSS. The Commission conducted a two-day hearing on October 1-2, 1992, according her all the rights pursuant to SDCL 1-26-18. Clearly, she was given a meaningful opportunity to be heard and submit evidence on her behalf. Strain v. Rapid City School District, 447 NW2d 332 (SD 1989). Schroeder's due process rights were not violated. 
[Â¶15] Affirmed. 
[Â¶16] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur. 
----Footnotes----
1. The administrative regulations refer to "just cause," whereas the relevant statutory sections refer to "good cause." We deem the terms equivalent. 
2. The Commission made the following pertinent findings of fact, supporting its decision that Schroeder's work performance was unsatisfactory: 


(1) Within the Department, the DPS is a critical management level position, providing an important link between the field and state office. A DPS is responsible for an important and sensitive function of implementing state policy at the field level. 
(2) Schroeder had difficulty adapting to the management role required of a DPS initially upon being appointed to that position. 
(3) Schroeder was unable to develop a good working relationship with her "Co-DPS," Ron Riedel. 
(4) Department Secretary, James Ellenbecker, attended a meeting with several foster parents who had involvement with Schroeder's office. The meeting was held at the request of a member of the board of social services, Gypsy Hines. The meeting was also attended by Judy Hines. The foster parents who attended the meeting expressed their concerns regarding the problems at the Sioux Falls office including a lack of positive leadership by Schroeder in her role as a DPS in the Sioux Falls office. The concerns included use of intimidation, lack of professionalism, and inter-office conflicts which affected the foster parents. 
(5) In response to Ed Colleran's decision to reorganize the Sioux Falls office by utilizing two DPS positions, Schroeder became angry and yelled at her supervisor, Ed Colleran. Schroeder later apologized to Colleran for her behavior. 
(6) Schroeder angrily yelled at Todd Steen, a CPS investigator who had apparently made a mistake in an investigation. She exhibited this unprofessional conduct in an outer office area of the Sioux Falls District Office, within hearing of other employees and clients of the Department. Schroeder later apologized to Steen for her behavior. 
(7) Schroeder made inappropriate and degrading comments regarding the Department of Social Services legal counsel... . 
3. The Commission made the following findings of fact: 


(1) By way of letter dated April 10, 1992, from Paula Hurd, Deputy Secretary for the Department, Schroeder was instructed to "counsel with yourself regarding issues we discussed at your evaluation." Hurd also stated that, "... supervisors and line staff are not to be involved." 
(2) Hurd's letter was preceded by verbal directions from Hurd indicating to Schroeder that she should not bring the matters addressed in the performance evaluation to the attention of other office workers. 
(3) On June 1, 1992, Schroeder was reprimanded for conducting an unauthorized community survey in Sioux Falls without consulting with a team which had been formed to deal with the issues raised in her April 8, 1992 evaluation. Prior to conducting the survey, Schroeder had not asked permission of her supervisors, nor had she consulted with her "Co- DPS" before conducting the survey. 
(4) Schroeder was reprimanded on June 10, 1992, as a result of her unauthorized contacts with office employees regarding her performance evaluation. The contact was in direct contravention of the Department's order given orally to Schroeder at the April 8, 1992, evaluation, and in writing in the April 10, 1992 follow-up letter from Hurd.