1996 SD 100

**Gerald R. LARSON, Petitioner and Appellant,**

v.

**Joyce HAZELTINE, in her official capacity as Secretary of State for the State of South Dakota, Defendant and Appellee.**

**No. 19748.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 8, 1996.

Decided Aug. 8, 1996.

Paul S. Swedlund of Gunderson, Palmer, Goodsell & Nelson, LLP, Rapid City, for petitioner and appellant.

Mark Barnett, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, for respondent and appellee.

PER CURIAM.

[¶ 1] Gerald Larson (Larson) appeals from an order quashing an alternative writ of mandamus and denying a peremptory writ of mandamus. We reverse.

## FACTS

[¶ 2] Larson is a proponent of an initiative drive which would require an election ballot to reflect a candidate's position on term limits (hereinafter referred to as "Initiative"). On May 6, 1996 a total of 999 petition sheets in support of the Initiative were received by the Secretary of State, Joyce Hazeltine. The Initiative was circulated by sixteen persons, including William Baisden (Baisden) and Russell Baggett (Baggett). Baisden and Baggett circulated 392 petition sheets, and it is these sheets which are at issue here.

[¶ 3] Pursuant to administrative rules promulgated by the State Board of Elections (the Board), the Secretary of State's Office conducts a signature validation process to determine which signatures found on a petition sheet are valid, and to determine whether the circulator's verification is complete. This validation process is conducted by the state election supervisor, an employee of the Secretary of State's Office. An initiative petition must contain the signatures of at least five percent of the registered voters in South Dakota in order to be filed and placed on the general election ballot. Based on the official canvass of the 1994 gubernatorial election in which 311,613 votes were cast, at least 15,581 valid signatures are required for the Initia-

tive to be placed on this fall's general election ballot. See SDCL 2–1–1, 2–1–5.

[¶ 4] During the petition validation process, Chris Nelson (Nelson), state election supervisor, determined that the circulator's verification was not complete on the 392 petition sheets circulated by Baisden and Baggett. Specifically, the circulator's verification did not contain the name of the circulator's city and this information was not provided elsewhere on the petition sheet. The form for the circulator's verification specifically asks for, and provides space for, the printed name and "complete address" of the circulator, the circulator's county of voter registration and signature, date of signing, and place for the officer witnessing the oath to sign.

[¶ 5] Baisden and Baggett each printed their names, their street address (3406 Idlewild Court), and the county in which they are registered to vote (Pennington), then signed and dated the verification form on each petition sheet. No signatures were counted on the 392 petition sheets circulated by Baisden and Baggett because their city was not provided. Consequently, the Secretary of State determined that the Initiative failed to achieve the required number of signatures.[1] On May 15, 1996, the Secretary of State mailed a letter to Larson notifying him that the measure would not be placed on the ballot.

[¶ 6] On June 18, 1996, Larson filed a petition for an alternative writ of mandamus, seeking to force the Secretary of State to place the Initiative on the ballot for the November 1996 general election. At a hearing on July 11, Nelson testified that he contacted the Pennington County Auditor where each of the men had recently registered to vote, and was able to determine the address each provided at the time they registered to vote. He also stated that there are seventeen communities located in Pennington County and that he was unaware of any community other than Rapid City which had a street named Idlewild Court. Nelson further testified that no one had challenged the

---

1. There are 12,555 valid signatures. This number is 3,026 short of the total of 15,581 signatures required to place the Initiative on the fall ballot. Larson alleges that the 392 petition sheets at issue contain approximately 10,000 additional signatures, more than enough to satisfy the minimum number to submit the matter to a vote.

validity of the petition signatures or circulators' affidavits. The Secretary of State conceded that there was no suspicion that any of the petition sheets or verifications were affected by fraud.

[¶ 7] At the conclusion of the hearing on July 11, Circuit Court Judge Steven L. Zinter orally stated his decision.[2] He concluded that the administrative rules require the circulator to provide a "complete address," that the name of the circulator's city is part of a "complete address," that failure to provide the name of the city was more than a technical defect, that the name of the circulator's city is an essential element, and that any other interpretation would "open the door to fraudulent and unverifiable petitions in the future." On August 1, 1996, Judge Zinter filed findings of fact and conclusions of law and its order quashing the alternative writ of mandamus and denying Larson's request for a peremptory writ of mandamus.

[¶ 8] On August 2, 1996, Larson filed his notice of appeal. He sought expedited review based on the fact that the Secretary of State must certify the ballots to the county auditors before August 13, 1996. The Secretary of State did not object to Larson's motion, and we granted expedited review under SDCL 15–26A–2.

## ISSUE

[¶ 9] **Should the Secretary of State be required to proceed with the signature validation process on 392 petition sheets in which the petition circulator did not list the circulator's city as part of the "complete address" required in the verification of the circulator?**

[¶ 10] Larson contends the Secretary of State should have validated the signatures on the 392 petition sheets circulated by Baisden and Baggett.even though these two petition circulators did not identify their city of residence. He contends the verifications at issue substantially complied with the requirement that the circulators provide their "complete address" because they listed the street address and county of voter registration. We must determine: (1) whether there is a legal requirement for a complete address on the petition, (2) if there is such a requirement, what is required by the phrase "complete address," and (3) whether the information provided was sufficient to substantially satisfy the requirements.

[¶ 11] As a preliminary matter, the Secretary of State contends that mandamus is the inappropriate form of relief because Larson does not have a clear legal right to have the Secretary proceed to verify the petitions at issue. This contention lacks merit. A petition for a writ of mandamus has been the manner in which proponents of initiated and referred measures have achieved review of similar claims to compel the Secretary of State to place their measure on the general election ballot. *See, e.g., State ex rel. Coon v. Morrison,* 61 S.D. 339, 249 N.W. 318 (1933). It is the appropriate method for review in this instance.

[¶ 12] Our analysis begins with the statutory and administrative provisions governing the verification which must be provided by the circulator of a petition. SDCL 2–1–10 states:

> Every person who circulates and secures signatures to a petition to initiate or submit to the electors any law pursuant to § 1, article III, of the Constitution, shall, before filing such petition with the officer in whose office it is by law required to be filed, make and attach to the petition an affidavit which shall be prescribed by the state board of elections. The affidavit must be witnessed by a notary public commissioned in South Dakota or other officer authorized to administer oaths pursuant to § 18–3–1. A petition circulator shall be a registered voter in South Dakota.

Both the petition and the sworn affidavit of the circulator are to be in the form prescribed by the Board. SDCL 2–1–6.2. *See* SDCL 12–1–9. The form for the affidavit or verification of the circulator is found at ARSD 5:02:08:07 and 5:02:08:00.03. If the

2. Judge Zinter expressly incorporated his oral decision announced at the conclusion of the July 11 hearing into his order.

circulator's verification is not completed or is improperly completed, the signatures on the petitions may not be counted, unless the missing information is completed elsewhere on the petition sheet. ARSD 5:02:08:00.01(b). These administrative rules stand on equal footing with statutes enacted by the legislature. *Nist v. Herseth*, 270 N.W.2d 565, 571 (S.D.1978).

[¶ 13] As the circuit court concluded, the foregoing provisions make it clear that there is a legal requirement that the circulator of the petition provide a "complete address" in the verification. Larson does not dispute this conclusion.

[¶ 14] The second question is, what is meant by the phrase "complete address"? The phrase is not defined in the applicable administrative rules or the statutes. "When a statute or rule does not define a term, it should be construed according to its accepted usage and a strained, unpractical, or absurd result should be avoided." *Nelson v. State Board of Dentistry*, 464 N.W.2d 621, 624 (S.D.1991) (citations omitted). "Administrative regulations are subject to the same rules of construction as are statutes. When regulatory language is clear, certain and unambiguous, our function is confined to declaring its meaning as clearly expressed." *In re Grievance of Schroeder v. Department of Social Services*, 1996 SD 34, ¶ 10, 545 N.W.2d 223 (citations omitted).

[¶ 15] At the conclusion of the hearing, and following arguments by counsel, Judge Zinter explained the basis of his decision. He stated:

The Court acknowledges that "complete address" is not defined in the rules or statutes. However, the Court concludes that the words "complete address" when taken in their usual and ordinary sense mean a street as well as a city. I think it would be almost absurd to conclude that complete address would allow the omission of someone's city. As a consequence, the Court's second conclusion is that this language does require—does include the requirement of including the city of residence.

This conclusion is consistent with the well-established rules of statutory construction. *See US West Communications, Inc. v. Public Utilities Comm'n*, 505 N.W.2d 115, 123 (S.D. 1993).[3]

[¶ 16] Further, the circuit court's conclusion is supported by the common definitions of the words complete and address. BLACK'S LAW DICTIONARY 285 (6th Ed. 1990), defines "complete" as: "Full; entire; including every item or element of the thing spoken of, without omissions or deficiencies; as a 'complete' copy, record, schedule or transcript." It defines "address" as "Place where mail or other communications will reach person. Generally a place of business or residence; though it need not be." BLACK'S LAW DICTIONARY 37 (citation omitted). Read together, then, a complete address is one which delineates every item and element of the place where communications will reach the circulator. Plainly, that includes not only the street number and name, but also the name of the city.[4]

3. An examination of ARSD 5:02:08:00.03 reveals an apparent inconsistency between the way the rule requires signers and circulators to provide their address. It requires the circulator to print his or her "complete address" without any further delineation of the information to be provided. Immediately prior to the form for the circulator's verification, the rule lists the information which must be provided by each individual signing a petition. It instructs signers to provide their "residence address," and the form specifically calls for "street and number or rural route and box number" and "city or town." Thus, the form prescribed for individual signatures expressly requires the signers to list their city or town as part of their residence address. In contrast, the form prescribed in the same rule for the circulator's verification requests only "complete address."

This inconsistency is not dispositive of the issue before the court. Even if we assume, without deciding, that the Board intentionally did not require circulators to provide their city when they clearly could have (as evidenced by the requirement for the petition signers), we are still left with the task of determining what is meant by "complete address." The circuit court properly limited its inquiry to the ordinary meaning of the phrase.

4. We have not been called upon to determine if any other information, such as state name or zip code are included in the phrase "complete address," and it is unnecessary to this case to offer an opinion in this regard.

■ [¶ 17] It is undisputed that the addresses provided by Baisden and Baggett on the 392 petitions at issue did not contain the name of the city in their address. Since this is not a "complete address," the state election supervisor and the Secretary of State could not legally count the signatures contained on the defective petitions and properly rejected them. ARSD 5:02:08:00.01(b). In determining whether to file these 392 petitions, their duties were purely ministerial, limited to matters apparent on the face of the petition, and they were without authority to exercise discretion to entertain Larson's claim that the verifications substantially complied with the rule's requirements. *Morrison*, 61 S.D. at 342, 249 N.W. at 319.

[¶ 18] Having concluded that the circulators were legally required to provide their "complete address," and that the definition of that phrase includes the name of the city as well as the street number and name, it is the task of the courts to determine whether the information provided was sufficient to substantially comply with the requirement that the circulators list their "complete address."

■ [¶ 19] SDCL 2–1–11 requires that initiative petitions be "liberally construed, so that the real intention of the petitioners may not be defeated by a mere technicality." We begin with a presumption that petitions which are circulated, signed, and filed are valid, and with the presumption that the circulator's affidavit is legal. *Morrison*, 61 S.D. at 342–43, 249 N.W. at 319. These presumptions do not, however, eliminate the need to substantially comply with the essential requirements of the law. *O'Brien v. Pyle*, 51 S.D. 385, 393, 214 N.W. 623, 626 (1927).

> "Substantial compliance" with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

*Rans v. State*, 390 N.W.2d 64, 66 (S.D.1986) (citations and quotations omitted).

[¶ 20] There has been considerable litigation over the essential information which a petition signer must provide, including the particular details of the address of the signer.[5] In general, these cases have held that failure to list the city was not merely a technical defect because the statutes specifically required residence address and post office address be listed for petition signers. That is not the case here where the rule's only requirement is that the circulator provide a "complete address" without more specificity.

[¶ 21] We have also considered several cases in which the affidavit or verification of a circulator has been called into question as knowingly false or fraudulent or has been

---

5. *See Nist*, 270 N.W.2d at 571 (failure to include street and house numbers in large communities is a substantial defect, although similar omission for signers in small towns valid under substantial compliance analysis); *Headley v. Ostroot*, 76 S.D. 246, 76 N.W.2d 474 (1956) (statutory requirement that signer state both residence address and post office address not subject to substantial compliance analysis; both place of residence and post office address are essential elements of the law); *Morrison*, 61 S.D. 339, 249 N.W. 318 (alleged failure of signers to include, among other things, their places of residence and post office address; defects in individual signatures will not invalidate entire petition sheet); *State ex rel. Jensen v. Wells*, 66 S.D. 236, 281 N.W. 99 (1938) (*Jensen I*) (requirement that signer state residence address and post office address is substantive; some variations allowed, others disallowed); *State ex rel. Jensen v. Wells*, 66 S.D. 269, 281 N.W. 357 (1938) (*Jensen II*) (various signatures failed to comply with various requirements and held invalid); *Shields v. Wells*, 65 S.D. 552, 276 N.W. 246 (1937) (substantial compliance argument rejected where single address provided did not state whether it was residence address or post office address, both of which were explicitly required by statute); *Morford v. Pyle*, 53 S.D. 356, 220 N.W. 907 (1928) (signer's residence address and post office address equally as important as signer's name); *O'Brien*, 51 S.D. 385, 214 N.W. 623 (substantial compliance argument rejected where, among other defects, signer did not write his residence and post office address).

absent entirely.[6] Again, that is not the situation presented by this case as there is no question as to fraud or omission; the verification of the circulators that they witnessed the individual signatures is not questioned at all. We have not previously considered a challenge involving what constitutes substantial compliance with the requirement that the circulator's verification include a complete address.

[¶ 22] In past cases involving the validity of initiative and referendum petitions, we have begun our substantial compliance analysis by examining the items expressly enumerated in the statute. Thus, where the statute required both the residence address and post office address, both are considered essential elements and the omission of one or both is not a technicality to be disregarded. *See* footnote 6, *supra*. Here, we are not presented with omission of an item expressly required by statute or rule; the circulator's city is not specifically required as part of the oath by the terms of the rule. Thus, it cannot be said that the circulator's city is an essential element of the circulator's verification based on the language of the rule itself. *See Rans*, 390 N.W.2d at 66. The Secretary of State is correct when she argues that the oath is a substantial requirement and without it, the petition is invalid. *See Corbly v. City of Colton*, 278 N.W.2d 459, 462 (S.D.1979). However, her case is overstated when she equates failure to list the circulator's city with the complete absence of a circulator's affidavit.

[¶ 23] We also look to the general purpose of the requirement at issue to determine if the omitted item is a substantial element of the information required. The purpose of the circulator's verification is to establish the genuineness of the signatures on the petition, and to allow potential challengers to contact the circulators to verify the signatures. *Nist*, 270 N.W.2d at 569. Here only the circulator's name, street number, street name, and county of voter registration were provided in the circulator's verification. Nelson testified that he was able to determine the address Baisden and Baggett provided in their voter registration,[7] that no one had challenged or attempted to challenge the petitions, and that there was no question as to whether the oaths were false or fraudulent. He also testified that, although there are seventeen communities in Pennington County, he was able to determine that only one community had a street named Idlewild Court. Thus, even the testimony of the state election supervisor demonstrates that he had the ability to contact Baisden and Baggett to verify the signatures, thus fulfilling the purpose of the address requirement in the verification.

[¶ 24] The Secretary of State contends that failure to include the circulator's city will lead to "ghost" circulators who cannot be located, will create a burden on potential challengers, and the entire initiative and referendum processes will be called into question. She also points out that the requirement to list a circulator's city is not onerous or confusing as evidenced by the fact that the other fourteen circulators provided complete addresses which included their city. Larson responds that the substantial compliance analysis is restricted to a case by case application, and that a favorable decision here will not alter the initiative process. Further, he points out that the Secretary of State can eliminate any perceived future problems by simply revising the form of the circulator's verification to mimic the specificity with which signers of the petition are

---

6. *Corbly v. City of Colton*, 278 N.W.2d 459, 462 (S.D.1979) (complete absence of oath of circulator cannot be excused based on substantial compliance); *Nist*, 270 N.W.2d 565 (improper notarization and circulation were substantial defects); *Jensen I*, 66 S.D. 236, 281 N.W. 99 (mere falsity of circulator's affidavit without proof of fraudulent intent will not invalidate petitions); *Jensen II*, 66 S.D. 269, 281 N.W. 357 (circulator's oath made before officer having no official seal); *Morrison*, 61 S.D. 339, 249 N.W. 318 (secretary must presume affidavit of circulator is legal unless proof establishes otherwise); *Morford*, 53 S.D. 356, 220 N.W. 907 (knowingly false affidavit of circulator fatal to petition); *O'Brien*, 51 S.D. 385, 214 N.W. 623 (unverified signatures stricken).

7. Copies of the voter registration cards of each man were submitted into evidence. Again, neither states the city in which the voter resides, but they do provide the county and zip code. The zip code provided is for western Rapid City.

required to provide their address. Larson is correct that the substantial compliance analysis has always been restricted to determining the validity of petitions in an individual dispute and has not been expanded to encompass a rule of general application in this context. *See Rans,* 390 N.W.2d at 66.

[¶ 25] In the final analysis, and considering this case on its undisputed facts, we are persuaded that substantial compliance has been demonstrated. The purpose of the circulator's verification is to attest to the fact that circulators actually witnessed the signatures of the individual signers, and that very fact is undisputed. In keeping with the mandate to liberally construe petitions, the Secretary of State should proceed to complete the signature validation process on the 392 petition sheets at issue.

[¶ 26] The order of the circuit court is reversed, and the matter is remanded for entry of a peremptory writ of mandamus directing the Secretary of State to proceed with the signature validation process on the 392 petition sheets at issue.

[¶ 27] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., participating.

