**DEPARTMENT OF PUBLIC SAFETY, State of South Dakota, Plaintiff and Respondent,**

**v.**

**Laronne Arlen WEINRICH, Defendant and Appellant.**

**No. 12056.**

Supreme Court of South Dakota.

March 20, 1978.

---

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Thomas W. Stanton, of Stanton & Fite, Brookings, for defendant and appellant.

ZASTROW, Justice.

This is another case involving South Dakota's Implied Consent Law. A hearing examiner for the Department of Public Safety ordered the revocation of defendant's license to drive because of defendant's

refusal to take a blood test upon request. A circuit court judge affirmed the hearing examiner's decision to revoke the license for one year, concluding that there was substantial evidence to support the hearing examiner's decision. We affirm the circuit court's decision.

The facts are essentially undisputed in this case. Laronne Arlen Weinrich was stopped for making an illegal turn in De Smet, on January 11, 1976, shortly after midnight. The officer's observations of Weinrich led to his arrest for DWI in violation of SDCL 32–23–1. The arresting officer began to advise him of his implied consent rights but was interrupted by the defendant. The officer advised the defendant to be quiet, started over and was able to read the defendant his rights in their entirety. Defendant continued to be belligerent and uncooperative during the officer's recitation of his rights. The defendant gave no answer at all when he was asked to take the test, but he continued to be belligerent and uncooperative. The arresting officer interpreted his actions to be a refusal, took the defendant to the sheriff's office and placed him in jail. Defendant later claimed that he did not hear the officer's request that he take a blood test.

After his driver's license was revoked by the Department of Public Safety, the defendant petitioned the circuit court for a trial de novo pursuant to SDCL 32–23–12. The first question raised by the defendant is the scope of review by the circuit court. The defendant contends that the court erred by allowing only a review of the evidence to determine if the agency's decision was supported by substantial evidence.

■ Under present South Dakota law, defendant had the choice of one of two methods to appeal from the Department of Public Safety hearing examiner's decision.[1] The defendant could appeal the agency's decision under the Administrative Procedures Act (APA) (SDCL, Ch. 1–26).[2] A

---

1. *State, Dept. of Public Safety v. Cronin,* 1977, S.D., 250 N.W.2d 690, 695.

2. SDCL 1–26–30.2: "An appeal shall be allowed in the circuit court to any party in a

review under SDCL, Ch. 1–26, is conducted by the court without a jury and is confined to the record of the administrative hearing.[3] The circuit court's scope of review in this type of appeal is limited according to SDCL 1–26–36 in that the court is not allowed to substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. If the court determines that, based on the record presented, the agency's decision was unsupported by the substantial evidence, then it may modify or reverse the agency's decision.[4]

The defendant sought review of the Department of Public Safety decision by way of SDCL 32–23–12,[5] which provides as follows:

"Any person whose license has been canceled, suspended, or revoked by the department of public safety under the provisions of § 32–23–11 shall have the right to file a petition within thirty days thereafter for a hearing in the matter in the circuit court for the county wherein such person was charged with the violation, and such court is hereby vested with jurisdiction and *it shall be its duty to set the matter for trial de novo* upon ten days' written notice to the department, *and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner's license is subject to cancellation, suspension, or revocation under the provisions of § 32–23–11.*" (emphasis added)

The hearing in circuit court is a trial de novo where testimony is required on which the court makes its own independent determination whether or not the license is subject to revocation. *Hanlon v. Commissioner of Motor Vehicles,* 1963, 80 S.D. 316, 123 N.W.2d 136; *Howe v. Commissioner of Motor Vehicles,* 1967, 82 S.D. 496, 149 N.W.2d 324. The state must prove by a preponderance of the evidence the facts necessary to justify the revocation. *Howe v. Commissioner of Motor Vehicles,* supra.

■ The circuit court judge took testimony and made his own examination into the facts of this case. He did not merely review the evidence from the agency hearing. However, instead of making its own determination of whether the defendant's license ought to be revoked, the trial court, using the APA standard, found that the agency's decision was supported by substantial evidence.[6]

We hold that the circuit court judge did err by limiting the scope of review to that found in SDCL 1–26–36. However, we also hold that such error does not constitute reversible error because the decision of the trial court is correct even if the defendant's version of the facts is accepted in toto.

■ Defendant Weinrich contends that an informed refusal is a prerequisite to a license revocation under South Dakota's Implied Consent Law. This court dealt with a similar situation in *Chmelka v. Smith,* 1964, 81 S.D. 40, 130 N.W.2d 423, where the driver testified that he had no recollection of his refusal to submit to a blood test or that anything was said to him concerning the consequences of his failure to comply. For the reasons set out in

---

contested case from a final decision, ruling or action of an agency."
SDCL 1–26–30.3: "Notwithstanding any other provision of law, all appeals authorized by § 1–26–30.1 or § 1–26–30.2 shall be taken and conducted pursuant to the provisions of this chapter."

**3.** SDCL 1–26–35.

**4.** SDCL 1–26–36(5).

**5.** The Administrative Procedures Act "does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or *trial de novo* when provided by law." SDCL 1–26–30. (emphasis added)

**6.** Trial court memorandum decision: "The scope of review is limited to SDCL 1–26–36. After reviewing the record and the evidence presented at the Hearing, the Court concludes that the only question is whether or not to reverse on the grounds specified in sub-division number (5) of SDCL 1–26–36, 'unsupported by substantial evidence on the whole record.'

"The standard is not whether there is substantial evidence contrary to the Agency's finding, but rather whether there is substantial evidence to support the Agency's finding."

*Chmelka,* supra, and *Beare v. Smith,* 1966, 82 S.D. 20, 140 N.W.2d 603, we hold that it was sufficient that the arresting officer followed the directions of the statute and advised the driver of the provisions of the implied consent law. There is no burden on the state to show that the driver understood what was read to him.[7] *Matter of Schuttler,* 1978, S.D., 262 N.W.2d 61. Furthermore, the defendant's actions constituted a refusal under SDCL 32–23–11 to justify the revocation of his license by the Department of Public Safety. *Beare v. Smith,* supra; *Blow v. Commissioner of Motor Vehicles,* 1969, 83 S.D. 628, 164 N.W.2d 351. We do not feel that a law enforcement officer must delay making his request for a chemical test until the arrested driver chooses to cease his belligerent and uncooperative attitude. One of the purposes of the implied consent law was to avoid the physical confrontation between an officer seeking evidence of blood alcohol content and an unwilling driver. We see no reason to encourage an arrested driver to provoke a confrontation to avoid the consequences of the implied consent law.

Defendant finally contends that if the trial court's interpretation of a trial de novo, i. e., as being a review for limited purpose only, was correct, then he did not receive a fair hearing before an impartial hearing examiner and was thus denied due process of law. Although the trial court's interpretation of scope of review was incorrect under *Matter of Campbell,* 1977, S.D., 250 N.W.2d 280, and *Peterson v. State,* 1977, S.D., 261 N.W.2d 405, defendant Weinrich has "no cause for a complaint of lack of due process" because he had a hearing where the trial court heard all the witnesses, and the facts justify the revocation regardless of the scope of review used by the trial court. *Matter of Campbell,* supra, 250 N.W.2d at 282.

The judgment is affirmed.

All the Justices concur.

**7.** Weinrich testified as follows: (DIRECT EXAMINATION) "Q Now, you have heard Officer Biteler's version of the arrest. Will you tell us when he came to your car door by the hotel— What happened from that point on, please? A Well, he asked me to get out, so I got out, and then he told me to get in his car, so I went and got into his car, and then he started writing the ticket out—DWI—without even giving me a walking test or anything like that, and that is what made me mad. I wasn't even drunk or nothing, and he just kept writing DWI, and that is why I got so mad, and at that state, I really couldn't hear exactly what he was saying. I don't know if he was reading rights or what, but I was so upset that—I mean, I figured that wasn't right. * * * Q Did you hear Officer Biteler read the right that said, in effect, that you would lose your driver's license for a year if you didn't take a blood test? A No, I didn't. How can you hear anything like that—just reading off some rights—I mean—Q You were angry at the time? A Yes. Q Did you know, at that time, without the reading of the rights to you, that if you refused to take a blood test that you would lose your license for a year? A No. I had no idea that would ever happen. If I knew that, I would have asked for the test, and I never had any such idea anything like that would happen, and that is why I think this is so unfair, because— (CROSS–EXAMINATION) Q And you do recall that Mr. Biteler did read some rights to you off a card. Is that correct? A He was saying something—He was looking at something and reading something off. Q And you refused to listen—Is that correct? A I didn't really refuse to listen. Q You were talking the whole time. Right? A Yes. Q And if you would have kept your mouth shut, you would have heard? A If he would have waited until I got done, maybe I might have heard. Q But, there is no question; you didn't hear because you were talking? Is that right? A That's right."