In the Matter of Dewey S. RANS, Petitioner and Appellee,

v.

STATE of South Dakota, DEPARTMENT of COMMERCE and REGULATION, Respondent and Appellant.

No. 14876.

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 1985.

Decided July 16, 1986.

Richard Sommers of Robert G. Fite Law Office, Brookings, for petitioner and appellee.

Sherri L. Sundem, Asst. Atty. Gen., Pierre, for respondent and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

MORGAN, Justice.

Appellant, State of South Dakota (State), appeals from a decision of the trial court which reversed the revocation of the driver's license of appellee Dewey S. Rans (Rans). We affirm the decision of the trial court.

On June 30, 1984, Rans was riding his motorcycle from Aberdeen, South Dakota, to Britton, South Dakota, to attend the centennial celebration in Britton. While en route, Rans encountered mechanical problems with his motorcycle and was forced to attempt repairs along the roadside. His difficulty was reported by a passerby to the officials at the Marshall County Courthouse in Britton.

Trooper Liknes and a deputy sheriff were dispatched to Rans' location. As the law enforcement personnel neared the reported location, they noticed a weaving motorcycle approaching. Trooper Liknes activated the red lights on his patrol car, whereby the motorcycle driver, Rans, immediately pulled his vehicle to the side of the road and stopped. Trooper Liknes approached Rans and noticed that he was unsteady on his feet and that he had an odor of alcohol about him. At that time, the trooper asked Rans to perform the heel-to-toe walking test. Rans did not touch his heel to toe as directed and he was unsteady on his feet according to the trooper. Trooper Liknes sensed increasing frustration on the part of Rans and in order to avoid a confrontation on the highway he asked Rans to place himself in the patrol car. While Rans was in the patrol car, Trooper Liknes administered the preliminary breath test (PBT). The indicating light on the PBT turned red, which indicated that Rans had over .10 percent alcohol in his blood. At this point, Trooper Liknes made the decision to arrest Rans and began reading him the implied consent advisory. Before he could finish, however, Rans exited the vehicle.

Rans was brought back to the car with the assistance of several law enforcement personnel and transported to the Marshall County Jail. After several scuffles, Rans was placed in a jail cell. There is no dispute that he was very uncooperative and hostile while being transported to the jail and while at the jail. He settled down somewhat and was allowed to make a requested telephone call. Yet another scuffle ensued and Rans was once again placed in the jail cell. Trooper Liknes then left the jail to attend to other business. It is undisputed that Rans was never read the entire implied consent warning by Trooper Liknes or any other law enforcement officer. Trooper Liknes, however, later filed a form which indicated that Rans had refused the chemical analysis after being read his implied consent warning.

Following an administrative hearing, the Department hearing officer entered an order revoking Rans' driver's license. Upon appeal and trial de novo pursuant to SDCL 32-23-12, the trial court reversed the Department's decision, holding that the trooper had not substantially complied with the implied consent advisory. State thereupon instituted this appeal.

It is State's major contention that Rans' belligerent and uncooperative actions upon his arrest for DWI constituted a refusal to submit to a chemical analysis under SDCL 32-23-11 and justified the revocation of his driver's license. Although we certainly do not condone the actions of Rans upon his arrest, the record is clear that no law enforcement personnel ever read Rans the implied consent advisory. This failure constitutes a violation of SDCL 32-23-10, which reads in pertinent part:

The person *shall* be requested by the officer to submit to the analysis and *shall* be advised by the officer that:

(1) If he refuses to submit to the chemical analysis, none may be given;

(2) If he refuses to submit to the chemical analysis, his driver's license shall be revoked for one year, unless pursuant to § 32-23-11.1 he pleads guilty to a violation of § 32-23-1 prior to a revocation order being issued; and

(3) He has the right to have a chemical analysis performed by a technician of

his own choosing at his own expense, in addition to the test requested by the officer.

(Emphasis added.)

State claims that Rans' belligerent and uncooperative actions constituted a refusal to take the test. This claim falls wide of the mark. In support of this position, State cites *Department of Public Safety v. Weinrich*, 263 N.W.2d 690 (S.D.1978). In *Weinrich*, the defendant was belligerent and uncooperative and interrupted the officer while he was giving him the implied consent advisory. The crucial distinguishing point between *Weinrich* and the case at hand is that upon interruption the officer in *Weinrich* again began to read the implied consent advisory *and completed the reading.* In this case, Trooper Liknes unilaterally decided that Rans would not listen to the implied consent advisory. He also filled out the refusal form. Apparently Trooper Liknes determined Rans would have refused the test even if the advisory would have been read to him. We cannot permit the abrogation of this statutory right simply based on a judgment call of law enforcement personnel.

The record clearly reflects several times when Rans could have been read the implied consent advisory. There is conflicting evidence concerning Rans' behavior in the patrol car on the way from the arrest site to the jail. It is abundantly clear, however, that law enforcement personnel could have advised him of his rights while he was behind bars in the Marshall County Jail without danger to any law enforcement personnel and it would not have taken more than two minutes of the trooper's time to do so.

State also seems to claim that the law enforcement officers substantially complied with SDCL 32–23–10. We do not agree with this contention. Trooper Liknes, by his own recollection, could not tell the trial court how much of the implied consent

warning was given to Rans. He stated at trial that he only started out with the first line before Rans exited. The first line of the advisory card reads: "1. I have arrested you for _____, a violation of SDCL 32–23–1."

" 'Substantial compliance' with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case."

*State v. Bunnell*, 324 N.W.2d 418, 420 (S.D.1982) (quoting *Smith v. State*, 364 So.2d 1, 9 (Ala.Crim.App.1978)) (citations omitted). In *Bunnell*, the law enforcement officer failed to advise the defendant of an amended provision of SDCL 32–23–11. In response to a "substantial compliance" argument, this court stated: "We hold that the officer failed to substantially comply with the mandatory requirements of SDCL 32–23–10 when he failed to completely advise appellant of the provisions of SDCL 32–23–11." *Bunnell*, 324 N.W.2d at 420.* The fact is the law enforcement personnel failed to advise Rans of any of the applicable statutory provisions regarding revocation. The law enforcement officers did not substantially comply with the mandatory requirements of SDCL 32–23–10.

In *Weinrich, supra,* we held that the defendant's silence constituted a refusal to submit to a chemical analysis. The key fact in *Weinrich*, however, was that he failed to respond *after the advisory had been read in its entirety.* Such was not the case here. It cannot be stated that

---

* It should be noted here that the provisions of SDCL 32–23–11 referred to in *State v. Bunnell,* 324 N.W.2d 418 (S.D.1982), were later placed in SDCL 32–23–10. 1983 S.D. Sess.L. ch. 244, § 5.

Rans refused a chemical analysis when he was never actually asked to submit to such an analysis.

We affirm the decision of the trial court that there was not substantial compliance with the implied consent statute.

FOSHEIM, C.J., HENDERSON and WUEST, JJ., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.