2001 SD 49

Glenn BAKER, Holly Baker, Paul Baker, Gloria Baker, Andrew G. Ridley, Kimmie D. Ridley, Dave O. Meredith, Patricia R. Meredith, Robert Morcom, Cathy Sulentic Morcom, Robert Harlan, Gen Harlan, Reed C. Richards, Ester M. Richards and the Save Centennial Valley Again Assn., Petitioners and Appellees,

v.

Connie ATKINSON, Lawrence County Auditor, and the Lawrence County Commission, Appellees,

and

Frawley Ranches, Inc., Intervenor and Appellant.

No. 21394.

Supreme Court of South Dakota.

Considered on Briefs Nov. 27, 2000.

Decided April 18, 2001.

Reed C. Richards of Richards and Richards, Deadwood, SD, Attorneys for petitioners and appellees.

John Fitzgerald and Bruce Outka, Lawrence County States Attorneys, Deadwood, SD, Attorneys for appellees.

Brad P. Gordon and Roger Tellinghuisen of Fuller, Tellinghuisen, Gordon & Percy, Spearfish, SD, Attorneys for intervenor and appellant.

WILBUR, Circuit Judge.

[¶ 1.] Frawley Ranches, Inc. (Frawley) appeals from a circuit court order denying intervention and a judgment granting a writ of mandamus. We affirm.

## FACTS

[¶ 2.] In 1998, Frawley began the process of developing a planned unit development (PUD) in Eastern Lawrence County, South Dakota. At that time, the 1,000 acres required for this development were zoned A–1 Agricultural under Lawrence County's Zoning Ordinance. For that reason, Frawley took the appropriate steps to move this project forward.

[¶ 3.] On September 2, 1999, the Lawrence County Planning Commission (planning commission) heard Frawley's rezoning requests as well as the request for a conditional use permit (CUP), PUD, and PUD overlay. At the meeting, the public was allowed to comment. The matter was then put to a vote and the rezoning requests, PUD, and PUD overlay were recommended for approval. The planning commission recommended a denial of the PUD developments planned for a portion of the suburban residential development. This matter then proceeded to the Lawrence County Commission (county commission) for approval.

[¶ 4.] On October 12, 1999, the county commission held a meeting to discuss Frawley's proposal. At the meeting Frawley made a presentation and the public again was allowed to comment on Frawley's plan. After this discussion, the county commission approved the rezoning requests. The CUP and PUD overlay were also approved contingent upon Lawrence County entering into a development agreement with Frawley. However, the county commission denied the PUD development for the suburban residential zoning district.

[¶ 5.] The county commission's approval brought about a referendum petition challenging the ordinances and resolutions. The referendum petition, as drafted and circulated, stated that the qualified voters of Lawrence County rejected pursuant to law:

> The Ordinances approving the Frawley Ranches, Inc., requests for change of zoning, passed by the Lawrence County Commissioners at its meeting on October 12, 1999, are titled as follows:

> COZ # 190; COZ # 191; COZ # 192; COZ # 193; COZ # 194; COZ # 195; CUP # 254; PUD contingent upon the County entering into a Development Agreement with the developers.

The above-named Ordinances are set forth in full in the attached minutes of the Lawrence County Commissioners Meeting Dated October 12, 1999.

After the required number [1] of signatures was obtained, the petition was submitted to the Lawrence County Auditor (auditor) to authenticate the number and validity of signatures. After the authentication was completed, the auditor submitted the petition to the county commission so that the issue would be submitted to the Lawrence County electorate for a vote.

[¶ 6.] The county commission refused to schedule a vote. The commission contended the petitions were not in proper form.[2] No other reason was provided for the refusal to schedule a vote. In response to the county commission's refusal Petitioners applied to the circuit court for a writ of mandamus to compel the county commission to schedule and administer a vote.

[¶ 7.] On November 23, 1999, the circuit court issued an order to show cause, requiring the auditor and the county commission to explain why the writ of mandamus should not be issued. The circuit court scheduled a hearing date of December 13, 1999 for the order to show cause hearing. On November 29, 1999, Frawley filed a motion to intervene pursuant to SDCL 15-6-24(c). The date for argument was set for December 13, 1999. On December 7, 1999, Frawley submitted a brief

---

1. This petition required 675 signatures for submission to the Lawrence County Auditor. It received over 1,700 signatures.

2. The county commission and auditor refused to set the election claiming that the petitions had multiple ordinances on one petition and therefore were invalid.

in opposition to the petition for writ of mandamus.

[¶ 8.] On December 13, 1999, a hearing was held before the circuit court. The court first heard arguments regarding the motion to intervene. Petitioners relied solely upon their written statement while Frawley argued orally before the circuit court. After considering the petitioner's written statement and Frawley's oral argument, the circuit court denied Frawley's motion to intervene.[3]

[¶ 9.] The circuit court denied Frawley's motion to intervene because the writ of mandamus that Petitioners sought did not seek relief from Frawley nor could the circuit court grant any type of relief directly to Frawley. The circuit court recognized that Frawley had an interest in the outcome of the vote, but had no interest in the validity of the petition. The circuit court did rule, however, that it would consider Frawley as amicus curiae. The circuit court subsequently allowed Frawley to argue on the merits at the hearing on the writ of mandamus.[4] At the close of Frawley's oral argument the attorney for the county commission stated, "I would like to have the Court acknowledge that the County joins in Frawley Ranches, Inc.'s, brief and in their oral arguments as have been presented today." After hearing argument and considering briefs from Petitioners, Frawley, and the county commission, the circuit court issued the writ of mandamus.

[¶ 10.] The issuance of the writ of mandamus was based on the following rationale. First, the circuit court held that this issue was subject to the referendum process under the statutes of South Dakota. Second, the circuit court stated that in order for the petition to be held invalid, the burden was on the county commission to make a showing of confusion, corruption, or fraud, and none was presented. The circuit court stated any confusion that might exist could be cleared up by a properly prepared ballot. Third, the form of the petition substantially complied with the statutory requirements that govern the validity of the petition. For those reasons, the writ of mandamus was issued. The county commission did not appeal from this decision.

[¶ 11.] After the writ of mandamus was issued, the county commission scheduled and administered a vote of the Lawrence County electorate. The results of that election rejected the Frawley development in its entirety, including the rezoning requests. Frawley appeals, raising the following issues:

> Did the circuit court err in denying Frawley's motion to intervene in the mandamus proceedings?

> Did the circuit court err in granting the writ of mandamus?

## STANDARD OF REVIEW

[¶ 12.] In determining if a circuit court erred in denying a motion to intervene, "[t]his Court's standard of review is whether the trial court abused its discretion in denying intervention as of right." *Weimer v. Ypparila,* 504 N.W.2d 333, 335 (S.D.1993).[5] Because a circuit

---

3. The circuit court denied both Frawley's motion to intervene as a matter of right and the request for permissive intervention. The circuit court justified both decisions with the same rationale.

4. In the record, the writ of mandamus hearing transcript illustrates that both the county

commission and Frawley argued extensively on the merits.

5. Frawley's brief cites a Minnesota Court of Appeals case that sets forth the standard as follows: "Denial of intervention of right is a question of law that the reviewing Court must independently assess." *Jerome Faribo Farms*

court has discretion in granting a writ of mandamus, the appropriate standard on review is also abuse of discretion. *Willoughby v. Grim,* 1998 SD 68, ¶ 6, 581 N.W.2d 165, 167; *See also Brown v. City of Yankton,* 434 N.W.2d 376, 378 (S.D. 1989). "[A]n abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *State v. Almond,* 511 N.W.2d 572, 574 (S.D.1994). In applying the abuse of discretion standard, "we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision." *Id.*

## DECISION

### 1. Intervention

■ [¶ 13.] To intervene as a matter of right, Frawley must satisfy SDCL 15–6–24(a)(2), which states:

> Upon timely application anyone shall be permitted to intervene in an action:
>
> > (2) When the applicant *claims an interest relating to the property or transaction* which is the subject of the action and he is so situated that the disposition of the action may as a practical matter *impair or impede his ability to protect that interest,* unless the applicant's interest is *adequately represented by existing parties.*

(emphasis added). Frawley argues that it had a direct interest in the transaction and the failure to allow it to intervene impaired its ability to protect that interest. Frawley also argues that the failure of the county commission to appeal was prima facie evidence that the existing parties did

not adequately represent Frawley's interests.

■ [¶ 14.] This Court has long held that "[t]he purpose of intervention is to obviate delay and multiplicity of suits by creating an opportunity to persons *directly interested* in the subject matter to join in an action or proceeding already instituted." *Jackson v. Board of County Commissioners Etc.,* 76 S.D. 495, 81 N.W.2d 686, 690 (S.D.1957); *See also Steiner v. County of Marshall,* 1997 SD 109, ¶ 40, 568 N.W.2d 627, 635 (Miller, C.J.concurring) (emphasis added). The circuit court denied the motion to intervene because Petitioners sought no relief from Frawley, nor could the court grant any relief to Frawley. The holding that Frawley had no direct interest in the writ of mandamus action is based upon a distinction between the validity of the petition (and therefore the issuance of the writ) and the resulting vote of the electorate.

[¶ 15.] The question of whether the circuit court should have allowed Frawley to intervene is a close one. Frawley clearly had an interest in the writ of mandamus proceeding because of the potential impact of a referendum election on its development. The circuit court was technically correct that it could grant no direct relief to Frawley. However, Frawley was effectively allowed to intervene by arguing the merits of the writ of mandamus issue at the circuit and appellate level. (*See* Issue 2, *infra* ) The error, if any, in not allowing Frawley's request for intervention has been rendered moot as Frawley was allowed "de facto" intervention. Frawley has suffered no harm as a result of the circuit court's decision on the intervention issue.

---

*v. County of Dodge,* 464 N.W.2d 568, 570 (Minn.App.1990). No South Dakota precedent supports this proposition and the South Dakota case cited for the appropriate standard of review was decided after this Minnesota case.

2. Writer of Mandamus

[¶ 16.] The nature of a writ of mandamus is an extraordinary remedy that will issue only when the duty to act is clear:

Mandamus is a potent, but precise remedy. Its power lies in its expediency; its precision in its narrow application. It commands the fulfillment of an existing legal duty, but creates no duty itself, and acts upon no doubtful or unsettled right. To prevail in seeking a Writ of Mandamus, the petitioner *must have a clear legal right to performance of the specific duty* sought to be compelled and the respondent must have a definite legal obligation to perform that duty.

*Sorrels v. Queen of Peace Hosp.*, 1998 SD 12, ¶ 6, 575 N.W.2d 240, 242 (citations omitted) (emphasis added). SDCL 21–29–1 provides the circuit court authority to issue this writ:

The writ of mandamus may be issued by the Supreme and circuit Courts, to any inferior tribunal, corporation, board, or person, *to compel the performance of an act which the law specifically enjoins as a duty* resulting from an office, trust, or station . . . (emphasis added).

A court may issue such a writ "where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." SDCL 21–29–2.

[¶ 17.] In the case now before us, Petitioners sought a writ of mandamus to compel the auditor and county commission to perform their statutory duties including the following:

SDCL 7–18A–16:

A petition to refer an ordinance or resolution subject to referendum may be filed with the auditor within twenty days after its publication. *The filing of such a petition shall require the submission of any such ordinance or*

*resolution to a vote of the qualified voters of the county for its rejection or approval.*

SDCL 7–18A–15.1 states, in part:

*Any legislative decision of a board of county commissioners is subject to the referendum process.* A legislative decision is one that enacts a permanent law or lays down a rule of conduct or course of policy for the guidance of citizens or their officers. Any matter of a permanent or general character is a legislative decision.

(emphasis added).

[¶ 18.] The county commission and Frawley did not dispute that these statutes create a legal duty to act. The dispute centered on the form of the petition. The county commission and Frawley argue that if the form of the petition does not meet the requirements set forth by statute, then no duty arises under either SDCL 7–18A–16 or 7–18A–15.1. With this in mind, and since the issue of a legal duty to act is not in dispute, this Court need only determine the petition's validity. This Court is cognizant that SDCL 2–1–11 requires that initiative and referendum petitions "shall be liberally construed, so that the real intention of the petitioners may not be defeated by a mere technicality." For this reason "[w]e begin with a presumption that petitions which are circulated, signed, and filed are valid." *Larson v. Hazeltine*, 1996 SD 100, ¶ 19, 552 N.W.2d 830, 835 (citations omitted).

[¶ 19.] This Court has previously held that the requirements governing a referendum petition are "*substantial in character and not merely requirements of form.*" *Bjornson v. City of Aberdeen*, 296 N.W.2d 896, 899 (S.D.1980) (*citing Corbly v. City of Colton*, 278 N.W.2d 459, 461 (S.D.1979)); *See also O'Brien v. Pyle*, 51 S.D. 385, 214 N.W. 623 (1927) (emphasis

added). "These requirements, must, therefore, have been *substantially complied* with in order to render the petition valid." *Id.* (emphasis added). Substantial compliance is defined as follows:

"Substantial compliance" with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

*Larson,* 1996 SD 100, ¶ 19, 552 N.W.2d at 835 (*quoting Rans v. State,* 390 N.W.2d 64, 66 (S.D.1986)). To determine whether the petition in this case is in substantial compliance this Court must examine the requirements that are expressly enumerated in the statutes that govern the petition's validity.

[¶ 20.] The form of a referendum petition is set forth in SDCL ch. 2–1 and SDAR ch. 5:02:08. More specifically, SDCL 7–18A–17 and SDAR 5:02:08.19 govern the form of the petition. SDCL 7–18A–17 provides:

If the matter intended to be covered by a referendum petition is the whole of any ordinance or resolution, the petition shall contain the *title of such ordinance or the subject of such resolution, and the date of its passage,* but if only a portion of such ordinance or resolution is intended to be covered by the petition, such portion shall be set out at length.

SDAR 5:02:08:19 provides:

County Referendum Petition. The county referendum petition shall be in the following form:

County Referendum Petition

WE, THE UNDERSIGNED, qualified voters of County, in the State of South Dakota, petition that the following (ordinance) (resolution), as passed by the County Commissioners of that County, be submitted to the voters of the country for their approval or rejection pursuant to law.

(Here insert the *title* of the (ordinance) (resolution) and the *date of its passage.* However, if only a portion of the (ordinance) (resolution) is intended to be covered by the petition that petition shall be set out at length.)

(emphasis added).

[¶ 21.] SDAR 5:02:08:19 states that "[t]he county referendum petition shall be in the following form" and then provides the form. The petition in this case was copied directly from this rule. SDCL 7–18A–17 states that the "title of such ordinance or the subject of such resolution, and the date of its passage ... shall be set out at length." The petition provides:

The Ordinances approving the Frawley Ranches, Inc., requests for change of zoning, passed by the Lawrence County Commissioners at its meeting on October 12, 1999, are titled as follows:

COZ # 190; COZ # 191; COZ # 192; COZ # 193; COZ # 194; COZ # 195; CUP # 254; PUD contingent upon the County entering into a Development Agreement with the developers.

The above-named Ordinances are set forth in full in the attached minutes of the Lawrence County Commissioners Meeting Dated October 12, 1999.

The petition clearly sets forth the title, subject, and the date of passage of the ordinances and resolutions at issue. Those are the express conditions set forth in the governing statutes. In addition, the min-

utes of the county commission's meeting are attached to the petition and are mentioned in the heading. Those minutes go into full detail and explain each of the ordinances and resolutions which are subject to referendum.

[¶ 22.] Frawley argues that the petition fails to substantially comply with statute for several reasons. First, the petition incorrectly refers to the PUD and CUP resolutions as ordinances. Second, the petition fails to set forth the titles of the ordinances to be referred. Third, the petition violates the single subject rule by failing to set forth each ordinance in a separate petition. Fourth, the attachment of the actual minutes from the October 12, 1999 county commission meeting is extraneous, beyond the four corners of the document. Further, there is no verification that each petition contained an attachment. Fifth, Frawley argues that even if the attachment of the minutes were proper, then the material preceding the minutes of the meeting and subsequent to it on the attachment is confusing.

[¶ 23.] SDCL 2–1–11 creates a presumption that petitions, which are circulated, signed and filed, are valid. This statute also mandates a liberal construction and emphasizes that the real intention of the voters should not be defeated by a mere technicality. *Id.* Regarding the first, second, and fifth arguments set forth by Frawley, this Court believes that if it were to void the petition for these reasons it would be allowing a "mere technicality" to "defeat the real intent of the petitioners." *Corbly,* 278 N.W.2d at 461. The third and fourth arguments, however, warrant closer scrutiny.

[¶ 24.] The "single subject" rule "minimize[s] the risk of voter confusion and deception" by requiring that a petition has only one subject. *Amador Val. Joint Union H. Sch. Dist., Etc.,* 22 Cal.3d 208, 149 Cal.Rptr. 239, 583 P.2d 1281, 1291 (1978). This rule also has its foundation in both the South Dakota Constitution and statutory law. *See* SDCL 7–18A–3 (stating an ordinance shall embrace only one subject, which shall be expressed in its title); S.D. Const. art. III, § 21 (stating that no law shall embrace more than one subject, which shall be expressed in its title). The practical application of this rule requires a standard to determine what constitutes a "single subject." Frawley argues that the petition violated the single subject rule because it contained six separate ordinances, a CUP, and a PUD. It is not the number of items that is important; rather, it is the closeness of the relationship between the items on the petition.

[¶ 25.] Other courts have set forth a standard to make this determination:

> [W]e are of the view that the [single subject] provision is not to receive a narrow or technical construction in all cases, but is to be construed liberally to uphold proper legislation, *all parts which are reasonably germane.* The provision was not enacted to provide means for the overthrow of legitimate legislation. Numerous provisions, *having one general object,* if fairly indicated in the title, may be united in one act. Provisions governing projects so related and interdependent as to constitute *a single scheme* may be properly included within a single act.

*Amador,* 149 Cal.Rptr. 239, 583 P.2d at 1290 (emphasis original; citations omitted); *See also Legislature of the State of Cal. v. Eu,* 54 Cal.3d 492, 286 Cal.Rptr. 283, 816 P.2d 1309, 1320–21 (1991) (stating that as long as the ordinances listed in the petition "are reasonably related to a common theme or purpose" this requirement is met). This Court agrees with the ratio-

nale set forth in *Amador* and hereby adopts the "reasonably germane" standard as the standard to determine whether the items on a petition constitute a "single subject."

[¶ 26.] The referendum petition states in its title that it pertains to "[t]he ordinances approving Frawley Ranches, Inc., requests for change of zoning." Directly following is a list of the ordinances listed separately. Despite the separate listing, it is evident from a reading of the petition that the separate listings all refer to the Frawley development. This Court will not apply the "reasonably germane" test in such a narrow or technical manner as to avoid the obvious plain meaning of this petition. *Id.* All ordinances separately listed refer to one thing, the Frawley development.

[¶ 27.] This Court is also aware of the circumstances and publicity surrounding the circulation and signing of the petition in the case now before us. As stated by the Court in *Amador*:

> We may take judicial notice of the fact that the advance publicity and public discussion of article XIII A and its predicated effects were massive. [citation omitted]. The measure received as much public attention as any other ballot proposition in recent years. *These circumstances would seem to dilute the risk of voter confusion or deception. . . .*

*Amador*, 149 Cal.Rptr. 239, 583 P.2d at 1291 (emphasis added). Here, the circuit court found no evidence of confusion, corruption, or fraud. Further, the court stated that a properly prepared ballot could clear up any confusion that might exist. The record in this case and the publicity that surrounded this petition supports that finding. Consequently, the petition satisfies the "reasonably germane" test and is not violative of the single subject rule.

[¶ 28.] Finally, Frawley urges us to find that attaching the county commission minutes to the petition causes its invalidity. The petition states that "[t]he above-named ordinances are set forth in full in the attached minutes of the Lawrence County Commissioners Meeting dated October 12, 1999." Frawley argues that because the verification does not affirmatively set forth that these minutes were attached to each petition circulated, its inclusion voids the validity of the petition. In addition, Frawley contends that the inclusion of the minutes cannot cure that which is lacking in the petition ... "notice to the electorate of the specific legislative act they are called upon to approve or repeal."

[¶ 29.] Since we have previously concluded the petition clearly sets forth the title, subject and date of passage of the ordinances and resolutions Petitioners sought to refer, there is no need to examine if the attachment seeks to cure that which is lacking in the petition. There is nothing lacking in the petition with regard to identification for the electorate of the specific legislative act they are called upon to approve or repeal.

[¶ 30.] The petition itself, without the attached minutes sufficiently establishes the title or purpose of the ordinances and resolutions and the date of passage as required by SDCL 7–18A–17. The circuit court specifically found no evidence of confusion, corruption or fraud. Applying the statutory presumption that petitions are valid and should be liberally construed, this Court finds the attachment does not affect the validity of the petition. The petition substantially complies with statutory requirements.

CONCLUSION

[¶ 31.] Since the writ of mandamus was properly issued, and Frawley was granted

the opportunity to argue the merits of the writ of mandamus both before the circuit court and this Court, we find that the circuit court did not abuse its discretion.

[¶ 32.] We affirm the circuit court's order and judgment.

[¶ 33.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 34.] SABERS, Justice, concurs specially.

[¶ 35.] WILBUR, Circuit Judge, for AMUNDSON, Justice, disqualified.

SABERS, Justice (concurring specially).

[¶ 36.] I write specially to point out that the trial court clearly erred in denying Frawley the right to intervene under SDCL 15–6–24(a)(2). Our intervention statute provides in relevant part:

Upon timely application *anyone* shall be permitted to intervene in an action:

When the applicant claims an interest *relating* to the property or transaction

. . .

the disposition of the action may as a practical matter impair or impede his ability to protect that interest . . .

unless the applicant's interest is adequately represented by existing parties.

(emphasis added). Frawley's application to intervene was timely, it related to the property and the transaction, which interest was not adequately represented by the County, and the disposition would impair or impede his ability to protect his interest. On every count or factor, we are faced with the same rationale for allowing Frawley to intervene. Neither the parties nor the trial court really dispute this. Therefore, the trial court was not "technically correct" but incorrect.

[¶ 37.] Nevertheless, the trial court acted contrary to its own ruling and allowed

Frawley to argue on the merits as if intervention was permitted. In fact, so did we. Therefore, the incorrect ruling was ignored by the trial court and Frawley can complain of no prejudice. "No harm, no foul." I concur specially to keep the law on this point correct, not incorrect.